UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-362-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| SIRCHIE ACQUISITION COMPANY, LLC | ) | |

The United States Attorney charges that:

## INTRODUCTION

At times material to this Criminal Information:

1. On December 14, 2005, the President/CEO/majority stockholder of Sirchie Finger Print Laboratories, Inc., ("Sirchie"), a New Jersey corporation located in Youngsville, North Carolina, entered a guilty plea to a felony in United States District Court for the Eastern District of North Carolina. The charge was reflected in a single-count Criminal Information charging a violation of the International Emergency Economic Powers Act (IEEPA) (Title 50, United States Code, Sections 1702 and 1705(b)).

2. As a result of this conviction the President/CEO/majority stockholder was required to pay a criminal fine of $850,000 and sentenced to 12 months probation. Sirchie itself was required to pay $400,000 in administrative fines and made subject to a suspended Denial Report.

1

3. The criminal Plea Agreement pursuant to which the President/CEO/majority stockholder entered this plea was tied to a civil Settlement Agreement between him and the United States Department of Commerce, Bureau of Industry and Security (BIS). This agreement detailed the President/CEO/majority stockholder's 181 violations (generally described below) of the EAR related to his illegal export scheme.[1] In exchange for BIS agreeing not to pursue administrative proceedings against him, the President/CEO/majority stockholder agreed to accept, among other penalties, the issuance of a Denial Order against him. Section 766.25 of the EAR states that denial orders can be issued for a person or entity convicted of a criminal violation of the EAA or IEEPA. The Denial Order was published in the Federal Register on September 28, 2005.

4. The terms of his individual Denial Order barred the President/CEO/majority stockholder from any and all participation in export activities for a period of five years from the date of

---

[1]Although the Export Administration Act (EAA), which regulated such conduct, expired on August 20, 2001, the President through Executive Order 13222 of August 17, 2001 (3 C.F.R. 2001 Comp. p. 783 (2002)), which has been extended by successive Presidential Notices, the most recent being that of August 15, 2007 (72 Fed. Reg. 46137 (August 16, 2007)), continues the Export Administration Regulations (EAR) in effect under the International Emergency Economic Powers Act, 50 U.S.C. § 1701-1705(IEEPA), including the President's authority to issue regulations under 50 U.S.C. § 1704. Both the EAA and IEEPA authorize investigations into violations of regulations issued to implement the authority of the relevant statute.

entry of the Order (signed September 22, 2005, and published in the Federal Register on September 28, 2005). Specifically, the Denial Order barred Sirchie's President/CEO/majority stockholder and, when acting for or on behalf of the President/CEO/majority stockholder, his representatives, agents, assigns or employees from participating, directly or indirectly, in any way in any transaction involving any commodity, software or technology...exported or to be exported from the United States that is subject to the Export Administration Regulations, or in any other activity subject to the Regulations.[2]

5. SIRCHIE ACQUISITION COMPANY, LLC, ("SA") was and is a Delaware limited liability company, formed in part for the purpose of purchasing substantially all of the assets of Sirchie.

6. On January 15, 2008, SA did in fact acquire substantially all the assets of Sirchie pursuant to an Amended and Restated Stock and Asset Purchase Agreement (the "Purchase Agreement"), dated September 12, 2007. Thereafter SA retained a number of Sirchie employees and officers (including Sirchie's President/CEO/majority stockholder pursuant to a consulting contract), operated from the same corporate facility in Youngsville, North Carolina, and

---

[2]Section 734.3 of the EAR defines the term "subject to the EAR", or subject to the Regulations. Under this section, items subject to the Regulations include (but are not limited to) all items in the United States or moving in transit through the United States from one foreign country to another and all U.S. origin items wherever located.

continued to operate the business substantially as it had been conducted prior to the purchase. Thus SA became a successor-in-interest to Sirchie.

7. Prior to SA's acquisition of substantially all of the assets of Sirchie, SA was aware that Sirchie and its President/CEO/majority stockholder had been the subject of an investigation by the United States as to whether they had committed a violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701-1705, by exporting approximately $1.25 million in forensic items, including fingerprint detection technology, which required licenses, to the People's Republic of China. The export was accomplished by shipments through a distributor in Italy for the purpose of disguising their eventual shipment to Hong Kong and the Peoples Republic of China.

8. SA was also aware of the fact that, prior to it's acquisition, the investigation had resulted in a guilty plea by the President/CEO/majority stockholder, his payment of the $850,000 fine and receipt of a Denial Order barring him from participation in all regulated foreign trade.

9. Prior to SA's acquisition of Sirchie, and in violation of the Denial Order applicable to him, Sirchie's President/CEO/majority stockholder, aided and abetted by other Sirchie personnel and personnel of one or more Sirchie affiliates, had on a number of occasions, including those specified in Counts

4

1-10 below, participated in the export process by recommending the pricing as to a series of proposed export shipments.

10. The President/CEO/majority stockholder's involvement in the barred export activities took place prior to SA's acquisition of substantially all of the assets of Sirchie.

## COUNT ONE

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about February 22, 2006, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that a Sirchie product, identified in Sirchie literature as a Folding Magnifier, and intended for export to South America be priced at "$10.00 net/net", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

COUNT TWO

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about May 22, 2006, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that a Sirchie product, a packaged quantity of cyanoacrylate, intended for export to Taiwan, be priced at "$3.75 net", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

COUNT THREE

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about October 11, 2006, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey

6

corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that a Sirchie product, a Scan-N-Find Pocket Imager Kit and a Krimesite Imager Direct View Kit, intended for export to Singapore, be priced at "$6,000" and "$8,000", respectively, and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT FOUR

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about November 20, 2006, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited

7

such participation, that is, such President/CEO/majority stockholder did recommend that a series of Sirchie products, including Ninhydrin spray, reagents, latent fingerprint powders, ink rollers and fingerprint lifting tape intended for export to South America, be priced at various written prices, and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT FIVE

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about March 8, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that a Sirchie product, ceramic fingerprint pads, intended for export to France, be priced at "$7.85, 12 wk delivery", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15,

Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT SIX

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about March 12, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that a list of Sirchie products, intended for export to Russia, be priced at "Dist. Less 25%" and "Dist. Less 20%", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT SEVEN

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about May 2, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie

9

Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that Sirchie fingerprint kits, intended for export to Singapore, be priced at "$64.25", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT EIGHT

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about May 15, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that Sirchie Krimesite Imagers and accessories, intended

10

for export to Kuwait, be priced at "$9,960.00", "$12,757.00" and "$13.00", and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

## COUNT NINE

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about July 25, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the Secretary of United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that Sirchie Male Sexual Assault Kits and Female Sexual Assault Kits and accessories, intended for export outside the United States, be priced at "$11.00" and "$12.00", respectively and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and Title 18, United States Code, Section 2.

COUNT TEN

Paragraphs 1 - 10 above are incorporated herein by reference.

On or about November 27, 2007, in the Eastern District of North Carolina and elsewhere, the President/CEO/majority stockholder of SIRCHIE ACQUISITION COMPANY, LLC's predecessor-in-interest, Sirchie Finger Print Laboratories, Inc., (Sirchie), a New Jersey corporation, did knowingly and willfully participate in and attempt to participate in the export from the United States of regulated items in violation of a Denial Order signed on September 22, 2005, by the United States Department of Commerce and published in the Federal Register on September 28, 2005, which prohibited such participation, that is, such President/CEO/majority stockholder did recommend that two sorts of Sirchie fluorescent powders, intended for export to the United Kingdom, be priced at "$4950.00" and "$4256.00", respectively, and did aid and abet another in doing so, in violation of Title 50, United States Code, Sections 1701-1705; and Title 15, Code of Federal Regulations §§ 764.2(b); and

12

Title 18, United States Code, Section 2.

GEORGE E. B. HOLDING
United States Attorney

*signature: Dennis␣Duffy for*
BY: JOHN S. BOWLER
Assistant United States Attorneys
U.S. Attorney's Office
310 New Bern Ave., Suite 800
Raleigh, North Carolina 27601
Telephone: (919) 856-4530
Email: John.S.Bowler@usdoj.gov
State Bar: NC18825